# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 18-925V**

| | |
|---|---|
| JOSE GAMBOA-AVILA, Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | Chief Special Master Corcoran<br>Filed: August 26, 2026 |

*Curtis Webb*, Curtis R. Webb, Attorney at Law, Monmouth, OR, for Petitioner.

*Lara Englund*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART FINAL AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On June 27, 2018, Jose Gamboa-Avila filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that a pneumococcal vaccine he received on November 13, 2017, caused him to incur Guillain-Barré syndrome ("GBS"). Petition (ECF No. 1) at 1. After oral argument by counsel, I denied entitlement. Decision, dated Sep. 11, 2023 (ECF No. 84) ("Decision"). Petitioner filed for a Motion for Review on October 11, 2023, but it was denied. *See Gamboa-Avila v. Sec'y of Health & Hum. Servs.*, No. 18-925V, 2023 WL 6536207 (Fed. Cl. Spec. Mstr. Sept. 11, 2023), *mot. rev. den'd*, 170 Fed. Cl. 441 (2024). An appeal of the Court's determination was then made to the Federal Circuit, but it resulted in affirmance of my original Decision. Decision, dated Feb. 11, 2026 (ECF No 104).

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

After the Motion for Review had been decided, Petitioner filed an application for an interim award of attorney's fees and costs—the first request for fees since the case was initiated in 2018. Motion, dated June 20, 2024 (ECF No. 100) ("Interim Fees Mot."). Before I responded to this pending fees request, Petitioner filed a Final Motion for Attorney's Fees and Costs. Motion, dated July 10, 2026 (ECF No. 107) ("Final Fees Mot."). Petitioner requests a total of $538,436.73. Interim Fees Mot. at 1; Final Fees Mot. at 1. This reflects $490,301.65 in attorney's fees and $47,225.37 in costs for the services of Curtis Webb. Interim Fees Mot. at 2–3. Final Fees Mot. at 2. It also includes $909.71 in costs for Petitioner's prior counsel, William McBride. Interim Fees Mot. at 3.

Respondent reacted to both the interim and final request, and in both deferred their resolution (as well as calculation of amounts to be awarded) to my discretion. Response, dated July 8, 2024 (ECF No. 101) at 2; Response, dated July 23, 2026 (ECF No. 109) at 4.

For the reasons below, I hereby **GRANT IN PART** Petitioner's motions, awarding fees and costs in the total amount of **$464,738.53**.

## ANALYSIS

### I. Petitioner's Claim had a Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs*., No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; unreasonably-incurred fees can still thereafter be limited or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs*., 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the

finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs*., 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs*., 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs*., 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that there was sufficient objective basis to entitle her to a fees and costs award. There was some record evidence that Petitioner experienced a variety of neurologic symptoms after receiving a pneumococcal conjugate vaccine, and the nature of the injury was reasonably contested, even if the overall weight of evidence was more supportive of a pre-vaccination onset. And I am cognizant of the fact that other special masters have reached a diametrically-opposed view on the theory at issue in this case. Thus, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein.

## II. Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there

is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner was previously represented by William McBride of the McBride Law Group from April 4, 2018 until June 3, 2019. Interim Fees Mot. at 15. Mr. McBride has represented through Mr. Webb that he shall forgo an award of attorney's fees, but will request reimbursement of his costs incurred in pursuing this matter. *Id.* (Those costs are addressed below).

Petitioner requests the following rates for his attorneys based on the years work was performed:

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|
| **Curtis Randal Webb (Attorney)** | $440.00 | $458.50 | $482.00 | $497.50 | $524.00 | $553.50 | $594.50 |
| **Alexander Jefferson Webb (Paralegal)** | $135.00 | $145.00 | $155.00 | $165.00 | $173.50 | $183.50 | n/a |

Interim Fees Mot. at 2–3; Final Fees Mot. at 2.

The rates requested by Mr. Webb are consistent with what has previously been awarded for Mr. Webb's time. *See Wilson v. Sec'y of Health & Hum. Servs.,* No. 20-1492V, slip op. at 2 (Fed Cl. Spec. Mstr. Jan. 15, 2026); *Fuller v. Sec'y of Health & Hum. Servs*., No. 15-1470V, 2025 WL 1453129 (Fed. Cl. Spec. Mstr. Apr. 29, 2025); *Nieves v. Sec'y of Health & Hum. Servs*., No. 18-1602V, 2023 WL 7131801, at *4 (Fed. Cl. Spec. Mstr. Oct. 2, 2023). The requested rates are also consistent with what has previously been awarded for Mr. Webb's time, in accordance with the Office of Special Master's fee schedule.[3] I thus find no basis to limit the fees to be awarded based on rate adjustments.

There is, however, a glaring problem with the present fees motions. For it cannot be gainsaid that an unusually substantial amount of time was devoted to a case that did not involve a trial.[4] I also note that although the claim involved complex scientific and medical issues, only the

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited Apr. 3, 2026).

[4] Rather, oral argument was heard in the matter from counsel, with the intend of avoiding a lengthy trial. **cite**

opinions of two experts, one on each side, were required for its disposition. Half a million dollars in fees—nearly ten times the expert costs (in a matter that turned particularly on expert input)—is facially questionable.

A more granular dive into the filed attorney invoices finds substantiation for the sense that my reaction is more than transient "sticker shock." Mr. Webb and his paralegal billed a total of 1,086.8 hours to this matter. *See* Interim Fees Mot. at 2; Final Fees Mot. at 2. But some of the billing entries are more appropriately classified as "administrative."[5] It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services ... should be considered as normal overhead office costs included within the attorneys' fees rates"). Attorneys have been denied fees for billing entries that include language such as "... receive disk, copy to computer ..." or "[c]heck file, docket, order and calendar" or "finalize invoice" or "reviewing invoices, setting up meetings, and making travel arrangements" on the basis that these entries represent administrative tasks. *Moxley v. Sec'y of Health & Hum. Servs*., No. 06-213V, 2017 WL 5080289, at *3 (Fed. Cl. Oct. 12, 2017); *Mostovoy v. Sec'y of Health & Hum. Servs*., No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Mr. Webb spent excessive time on simple tasks, a fact evident from billing over two-hundred hours in both 2021 and 2022. Interim Fees Mot. at 2. In 2020, the Petitioner filed his Amended Petition, Second Affidavit, one expert report by Dr. Lawrence Steinman, exhibit list, and Dr. Steinman's supporting literature—all on the same day. Amended Petition, dated July 16, 2020 (ECF No. 36-1) ("Amended Pet."); Affidavit, dated July 16, 2020 (ECF No. 39) ("Second Pet. Aff."); Report, dated July 16, 2020, filed as Ex. 15 (ECF No. 38-1); Exhibit list, dated July 16, 2020 (ECF No. 37); ECF Nos. 40–42, dated July 16, 2020. The only other item filed by petitioner during this year was Mr. Webb's Notice of Change of Address. Notice, dated Dec. 4, 2020 (ECF No. 49). It is difficult to understand why it took Mr. Webb 4.2 hours to draft and submit Petitioner's Amended Petition—a five-page document that is double spaced, bullet pointed, and spends one page listing exhibits. *See* Amended Pet.; ECF No. 100-1 at 3–6. Mr. Webb spent a comparable amount of time preparing Petitioner's Second Affidavit, a similarly concise document. *See* Second Pet. Aff.; ECF No. 100-1 at 2–6.

It appears that Mr. Webb also dedicated a substantial amount of time to internal communications, writing memos on how to respond to certain arguments, planning his work, and organizing his thoughts on preparing for status conferences and how to resolve the case. *See, e.g.*, Billing entries dated Sept. 27–29, 2019 (two hours preparing for conference with client); Mar. 3, 2021 (0.5 hours to "confer with staff"); May 3, 2021 (0.7 hours "Corresponded with Alexander Webb re: difficulty filing Dr. Steinman's articles, asked him to disarm and file the articles"); May

[5] *See, e.g.,* Billing entries dated May 4, 2021; Sept. 6, 2021; Sept. 7, 2021.

4, 2021 ("Received email from Alexander Webb re: filing of medical records"); May 10, 2021 (attorney and paralegal billing 2.5 hours for a discussion on "route to an entitlement decision without a hearing"); May 12, 2021 (0.8 hours for preparing memo of status conference recap); May 12, 2021 (3 hours "Prepared memo: treating doctor's opinion on relationship between Prevnar-13 and client's GBS"); Aug. 4–6, 2021 (spending 13.5 hours on preparing a memorandum on proof of causation); Aug. 8, 2021 (1 hour billed for discussion between paralegal and attorney discussing strategy for response to Respondent's expert report and "timeline for brief preparation"); Aug. 11, 2021 (4 hours for "Prepared memo: Medical records demonstrate that the treating doctors considered the PCV vaccine a potential cause of client's GBS"); Aug. 12, 2021 (3 hours "Prepared memo: The legal significance of widespread recognition that vaccines and PCV can cause GBS"); Dec. 29, 2021 (3 hours for "Prepared memo: my thoughts on response to Dr. Whitton's second supplemental report"); Jan. 3–23, 2022 (spending over 30 hours preparing a memo and analyzing respondent's expert report, attorney and paralegal discussing expert report with each other).

Mr. Webb further spent a notable amount of time drafting emails in this matter, some of which taking hours to craft and send. Some emails to the client about the status of the case came close to and exceeded two hours in preparation—longer than counsel took to read and review expert reports. *Compare* Billing entry for 2:24 hours dated Jan. 21, 2020 ("Prepared a detailed letter to client in English and Spanish explaining that HHS intends to defend against his case" and explaining the general Program claim process); *and* Billing entry for 2:12 hours dated Mar. 24, 2020 (preparing another email to the client describing the status of the case); *and* Billing entry for 2:30 hours dated Nov. 21, 2020 ("Prepared detailed status report to client (sent via email)"), *and* Billing entry for 1:48 hours dated Nov. 26, 2020 ("Prepared detailed email to Alexander Webb re: cause in fact; expert reports; hearing"), *and* Billing entry for 2:00 hours dated Feb. 7, 2023 ("Prepare email to Dr. Steinman re: Bielak decision, how to address it - 3 emails, 3 replies"), *with* Billing entry for 1:30 hours dated Dec. 3, 2020 ("Reviewed [Dr.] Whitton report"); *and* Billing entry for 1:00 hours dated July 12, 2020 ("Read Dr. Steinman's references").

In total, Petitioner's counsel billed over eighty hours (80) for receiving, reading, drafting, and sending emails in this matter. *See* ECF No. 100-1 at 2–26; ECF No. 107-1 at 2–10. While it is possible language barriers with Petitioner were somewhat to blame, this is still excessive, especially considering that this is more time than Petitioner's counsel spent on traveling and actually litigating the matter in 2019 (47.9 hours spent), 2020 (73.9 hours spent), or 2025 (74.7 hours spent). *See* Final Fees Mot. at 2.

All of the foregoing establishes that counsel spent a substantial amount of time on this matter—but in so doing devoted a disproportionately large amount of time to excessive or redundant tasks. A special master need not award fees for "hours that are excessive, redundant, or otherwise unnecessary." *Valdes v. Sec'y of Health & Human Servs.*, 89 Fed.Cl. 415, 424–25 (2009)

(citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Rather, in evaluating a fee request, a special master is permitted to reduce attorneys' hours found to be excessive by a percentage; a "line-by-line" determination is not required. *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs*., 3 F.3d 1517, 1520 (Fed. Cir. 1993).

Mr. Webb is a respected Program professional, and I do not seek to denigrate him personally, or to question the overall value of the work he performed on this case. Nevertheless, it is my reasoned judgment that an unsuccessful case that did not require a trial or more than one expert per side should not result in so excessive a bill. And that assessment is corroborated by the instances of overbilling I have identified. Accordingly, in the exercise of my discretion in awarding fees in unsuccessful cases and in keeping with the judicial policy of not rendering fees decisions a secondary litigation, I find it appropriate to reduce Mr. Webb's total fee award by 15%. This results in a reduction of **$73,545.25**.[6]

## III. Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks **$47,225.37** in costs for the services of Curtis Webb. Interim Fees Mot. at 2–3; Final Fees Mot. at 2. He also seeks **$909.71** in costs for Petitioner's prior counsel, William McBride.[7] Interim Fees. Mot. at 3. These costs include, but are not limited to, the filing fee, medical record retrieval costs, mailing costs, travel expenses, litigation costs, appeal costs, and costs associated with experts Dr. Lawrence Steinman. I shall grant the costs for filing fee, medical record retrieval costs, mailing costs, and travel expenses in full.

Mr. Webb further requested reimbursement for costs for medical journals. ECF No. 100-2 at 2. Medical journals and subscriptions are considered overhead expenses and are non-compensable in the Program. *Rodriguez v. Sec'y of Health & Hum. Servs*., No. 06-559V, 2009 WL

---

[6] Calculated by: $490,301.65 x (15/100) = $73,545.25.

[7] Mr. McBride did not with to request an award of attorney's fees for the time he and his firm devoted to representing the Petitioner. Interim Fees Mot. at

2568468, at *23 (Fed. Cl. July 27, 2009) (finding that a National Law Journal Subscription was an overhead expense and not compensable). Therefore, I shall reduce Mr. Webb's costs by **$152.95**.[8]

1. *Petitioner's Expert- Dr. Lawrence Steinman*

Dr. Steinman is an experienced medical provider and regularly testifies in the Program. Over the course of this claim, he prepared four written reports for the Petitioner. Report, dated June 21, 2020, filed as Ex. 15 (ECF No. 38-1); Report, dated April 25, 2021, filed as Ex. 39 (ECF No. 55-1); Report, dated September 5, 2021, filed as Ex. 46 (ECF No. 62-1); Report, dated January 22, 2022, filed as Ex. 71 (ECF No. 68-1). All told, Dr. Steinman prepared more than 100 pages in support of Petitioner's claim.

For these four reports, Dr. Steinman charged Petitioner $39,325.00 at a rate of $550 per hour for 71.5 hours of work. Interim Fee Mot. at 14; ECF No. 100-3 at 2–4. Dr. Steinman has been awarded this hourly rate in the past and I find no reason to reduce it herein. *See, e.g., Baxter v. Sec'y of Health & Hum. Servs.,* No. 16-922V, 2023 WL 2320342, at *7 (Fed. Cl. Spec. Mstr. Mar. 2, 2023) (granting Dr. Steinman's requested $550 rate for work performed in 2022); *Sparrow v. Sec'y of Health & Hum. Servs.*, No. 18-295V, 2021 WL 5410424, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2021) (finding that $550.00 per hour was reasonable for work Dr. Steinman performed in 2021). Similarly, I find the number of hours devoted to the matter reasonable, and shall award his costs in full.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs. Petitioner is awarded attorneys' fees and costs in the total amount of **<u>$464,738.53</u>** to be distributed as follows:

- **A lump sum of $463,828.82, representing reimbursement for attorneys' fees of $416,756.40 and costs of $47,072.42 to be paid through an ACH deposit to Petitioner's counsel of record, Mr. Curtis Webb's IOLTA account for prompt disbursement; and**

- **A lump sum of $909.71, representing reimbursement for attorneys' costs to be paid through an ACH deposit to Petitioner's former counsel, Mr. William McBride's IOLTA account for prompt disbursement.**

[8] Calculated by: $47.95 (billing entry dated 02/28/2022) + $25.00 (billing entry dated 02/28/2022) + $$40.00 (billing entry dated 03/01/2022) + $40.00 (billing entry dated 03/01/2022) = $152.95.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[9]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.